Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1288 | **DATE** | 2/9/2001 |
| **CASE TITLE** | Derrick D. Smith, et al. vs. Short Term Loans, LLC, et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■  Enter Memorandum Opinion and Order. Defendants' motion to dismiss the Fourth Amended Complaint [70] is granted in part and denied in part, as set forth in the accompanying Memorandum Opinion and Order. Defendants' motion for summary judgment [55] is granted in part and denied in part, as set forth in the accompanying Memorandum Opinion and Order. Plaintiffs' cross-motion for partial summary judgment as to the FDCPA claim [64] is denied. Defendants' motion to strike exhibits [71] is denied as moot. Plaintiffs' motion for class certification as to the Third Amended Complaint [49] is denied as moot. Plaintiff's "Amended Motion for Class Certification" as to the Fourth Amended Complaint [63] is granted as modified by the accompanying Memorandum Opinion and Order. Plaintiffs' motion for entry of default judgment [81-1] is denied. Plaintiffs' motion to compel [81-2] is granted.

(11) ■  [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| ✓ | Notified counsel by telephone. | | FEB 1 4 2001 | 86 |
| ✓ | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | CM | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | |
| | courtroom deputy's initials | DOCKETING 01 FEB 13  AM 8: 50 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED

FEB 1 4 2001

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DERRICK D. SMITH; VALERIE D. SMITH,  )
and AMY C. WALKER,                    )
                         Plaintiffs,  )
                                      )
              v.                      )    No. 99 C 1288
                                      )
SHORT TERM LOANS, LLC; BRIAN D.       )    Judge Joan B. Gottschall
SCHULMAN; JAMES T. CHESLOCK;          )
BARRY HERSHMAN; WENDY EAGER; and      )
JOHN DOES 1-10,                       )
                         Defendants.  )

### MEMORANDUM OPINION AND ORDER

#### Background

Before the court are several pending motions in this purported class action suit brought by

Derrick and Valerie Smith against defendants Short Term Loans, LLC, Brian Schulman and

James Cheslock, as well as ten unnamed defendants. A description of the relevant facts and the

complicated procedural history of this case is necessary to an understanding of the court's

disposition of these motions.

*Relevant Facts and Allegations*

This case is about short-term, "payday" loans. These loans, at least initially, are for only

a short period of time, usually about two weeks. The lenders generally charge a high rate of

interest for these loans. Frequently, although not always, the lenders require some form of

security for the loans. At issue in this case are two different forms of security – postdated

checks and wage assignments. The plaintiffs in this case, who seek to represent classes of

similarly situated individuals, borrowed from short-term lenders on several occasions. Defendant

Short Term Loans is an entity located in Elk Grove Village, Illinois that specializes in making



short-term loans.  Defendants Brian Schulman and James Cheslock are attorneys licensed to practice in Illinois.  The plaintiffs allege that Schulman is an employee of Short Term Loans or an affiliate.  They further allege that Cheslock is a "managing agent" of Short Term Loans and spends "about 80% of his time managing the loan business of Short Term Loans."  (4th Am. Compl. at 2).

Plaintiffs borrowed money from Short Term Loans on several occasions.  Between January 24, 1998 and September 25, 1998, Derrick Smith obtained 15 payday loans from Short Term Loans, in amounts varying from $120 to $400.  The annual percentage rates (APR) on these loans ranged from 342.19% to 421.54%.  Between February 5, 1998 and September 18, 1998, Valerie Smith obtained 11 loans, ranging from $150 to $400 at rates from 342.19% to 391.07%.  For each of these loans, the plaintiffs signed an "Advance Contract and Disclosure Statement."  These were generally pre-printed forms used by Short Term Loans, with blanks left for personal information, due date, amount, finance charge, APR, and total payment.  Short Term Loans used different forms at different times, and the precise form used, and disclosures made therein, are relevant to some of plaintiffs' claims.  The plaintiffs allege that for each loan they obtained, they gave Short Term Loans a postdated check.  They also allege that they executed wage assignments with each loan obtained on or after May 16, 1998.

The plaintiffs' reasons for taking out the loans is in dispute.  The plaintiffs argue that the loans were used for consumer purposes, such as buying children's clothes and paying certain utility bills, although they cannot say with specificity which loans were used for what.  The defendants argue that the plaintiffs were sophisticated "Ponzi schemers" engaged in an elaborate check-kiting scheme.  Specifically, the defendants argue that the plaintiffs would obtain payday

loans from multiple lenders on multiple occasions, using one loan to pay off another. The

defendants assert that the plaintiffs pledged their income to several lenders, borrowing more than

their weekly income, and knowing that they could not repay all of the loans. The plaintiffs'

intent, argue the defendants, was to defraud their creditors and to make a profit on this scheme.

The plaintiffs readily admit that they used one loan to pay off others. They argue, however, that

this was not part of a scheme, but rather an unfortunate downward spiral of necessity

characteristic of payday borrowers. Plaintiffs further argue that Short Term Loans was well

aware of this characteristic spiral, and actually facilitated it through their lending practices.

At some point, plaintiffs stopped paying off their payday loans. In an effort to collect on

the outstanding loans, Short Term Loans sent dunning letters to the Smiths. The letters were

standard form letters used by Short Term Loans. The form letter at issue here read, in its entirety

(including letterhead):

**BRIAN D. SCHULMAN**
*ATTORNEY AT LAW*

SHORT TERM LOANS, L.L.C.
1400 E. TOUHY AVE. # 100
DES PLAINES, ILLINOIS  60018
PHONE:  847-759-4646 Ext. 4646
FAX:  847-759-4680

February 18, 1999

Derrick Smith
510 Macie Ct. #5
Addison, IL 60101

Re:  Short Terms Loans, L.L.C. - Loan #5265 - Due Date: 10-09-98

Dear Mr. Smith:

3

This is your final opportunity to work out payments of your past due loan before I file a lawsuit against you.  I urge you to contact me immediately upon receipt of this letter to arrange payment of the balance due.

Thank you in advance for your cooperation.

Sincerely,
s/ Brian D. Schulman
Brian D. Schulman

The letter sent to Ms. Smith was identical in all respects, except that it was addressed to her and contained the information specific to her loans.  The name Brian D. Schulman in the letterhead is printed in a noticeably larger font than the rest of the letterhead.  The Smiths apparently never fully repaid the loans.  On February 26, 1999, they commenced this action.

*Procedural History*

The plaintiffs[1] filed their initial complaint on February 26, 1999.  That complaint named as defendants Short Term Loans, Cheslock, Schulman, and ten unnamed defendants ("other officers, directors, shareholders, and managing agents" of Short Term Loans (Compl. at 3)).  The complaint contained three individual claims and two class claims, including: 1) violations of the Truth in Lending Act (TILA) against only Short Term Loans, 2) violations of the Fair Debt Collection Practices Act (FDCPA) against Short Term Loans and Schulman on behalf of a purported class, 3) violations of the Illinois Wage Assignment Act against Short Term Loans, Cheslock, and Schulman on behalf of a purported class, 4) common law unconscionability against all defendants, and 5) violations of the Illinois Consumer Fraud Act (ICFA) against all defendants.  Then, on March 22, 1999, the plaintiffs filed an amended complaint, which added

---

[1] The initial complaint included as a plaintiff Amy C. Walker, who was later dismissed as a plaintiff for failure to prosecute her case.  (Order 10/19/99).

4

corresponding class claims to the individual TILA, unconscionability, and ICFA claims.  In June,

1999, the plaintiffs filed their first motion for class certification.  Before the class certification

issue was decided, the plaintiffs sought, and were granted, leave to file a second amended

complaint.  On July 6, 1999, the plaintiffs filed a second amended complaint, which made two

changes:  first, it removed the new class claims that the amended complaint had added; second, it

purported to name two of the previously unnamed defendants, Barry Hershman and Wendy

Eager.[2]  Shortly thereafter, the plaintiffs again filed a motion for class certification.

Before that motion for class certification was decided, the court dismissed the second

amended complaint, and denied the motions for class certification as moot.  The court dismissed

the TILA claim *sua sponte* because plaintiffs were seeking only statutory damages under a

provision for which statutory damages are not warranted.  (Order 3/16/00 at 3) (citing *Brown v.

Payday Check Advance*, 202 F.3d 987 (7th Cir. 2000)).  The court dismissed the FDCPA claim

because the plaintiffs failed to allege that the loans were "primarily for personal, family, or

household purposes" as required by the statute.  (Order 3/16/00 at 3-5).  Finally, the court

declined to exercise supplemental jurisdiction over the remaining state law claims.  (Order

3/16/00 at 5).  On April 17, 2000, the plaintiffs filed a third amended complaint, on behalf of a

purported class, alleging only a violation of the FDCPA, based on the same factual allegations

contained in the earlier complaints, but adding an allegation that the loans were "for personal,

family or household purposes, for example utility bills and children's clothing."  (3d Am. Compl.

at 4).  The plaintiffs again filed a motion for class certification.  Before that motion could be

---

[2] These two new named defendants were later dismissed by the court upon plaintiffs' oral
motion.  (Min. Order 6/1/01).

decided, the plaintiffs sought leave to file a fourth amended complaint maintaining the FDCPA

class claim from the previous complaint (Count I), and adding claims, on behalf of a class, for

violations of TILA (Count II) and ICFA (Count IV), as well as a common law unconscionability

claim (Count III).  The ICFA and unconscionability claims essentially mirrored the

corresponding claims in earlier complaints.  The new TILA claim, however, was based on a

different statutory provision – one for which statutory damages are available.  *See Jackson v.*

*Check 'N Go of Illinois, Inc.*, 193 F.R.D. 544, 548 (N.D. Ill. 2000) (statutory damages available

for violations of 15 U.S.C. § 1638(a)(9)).  Shortly thereafter, the defendants filed a motion for

summary judgment attacking the single FDCPA claim in the third amended complaint.  On

September 18, 2000, the court entered an order granting the plaintiffs' motion for leave to file the

fourth amended complaint.  The plaintiffs filed their fourth amended complaint (described

above), along with an "Amended Motion for Class Certification" (which corresponded to the

claims in the fourth amended complaint) on October 2, 2000.  The plaintiffs also filed a response

to defendants' motion for summary judgment as to the FDCPA claim, including a cross-motion

for summary judgment on that same claim.  In addition, the plaintiffs moved for summary

judgment as to liability on the new TILA claim added in the fourth amended complaint.  Later in

October, the defendants filed a motion to dismiss the fourth amended complaint in its entirety.

The parties continued to brief the earlier summary judgment motions.  The defendants also

moved to strike certain exhibits attached to plaintiffs' brief in opposition to summary judgment

on the FDCPA claim.  Finally, on December 18, 2000, the plaintiffs filed a motion for entry of

default judgment against defendants Short Term Loans and James Cheslock, and to compel

defendants to produce loan documents related to the loans of any putative class members that

remain unpaid.

As a result of this convoluted procedural history, there are currently nine motions still pending before this court:  1) the defendants' motion for summary judgment as to the FDCPA claim, 2) the plaintiffs' cross-motion for summary judgment as to the FDCPA claim, 3) the defendants' motion to strike portions of the plaintiffs' response and cross-motion, 4) the plaintiffs' motion for summary judgment as to the new TILA claim, 5-6) the plaintiffs' outstanding motions for class certification (corresponding to both the third and fourth amended complaints), 7) the defendants' motion to dismiss the fourth amended complaint, 8) the plaintiffs' motion for default judgment, and 9) the plaintiffs' motion to compel.

## Analysis

The Federal Rules of Civil Procedure instruct that the class certification issue should be addressed "[a]s soon as practicable after the commencement of an action brought as a class action." Fed. R. Civ. P. 23(c)(1).  Generally, the class certification question should be decided by the court before dispositive motions as to the merits of the case. *See Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995).  The Seventh Circuit has recognized that, in some circumstances, decisions on dispositive motions may be made prior to the certification issue to determine whether "the claim of the named plaintiffs lacks merit." *See id.*  In such cases, the defendants lose the preclusive effect of the judgment on the merits against would-be class members, but save the cost of defending a class action. *See id.* at 941-42.  Given that there is doubt about the merits of the named plaintiffs' claims, and given that the defendants' motion to dismiss and motion for summary judgment are fully briefed, the court finds that it is in the interest of judicial economy to weed out the plaintiffs' meritless claims before addressing the

7

complex class certification issues in this case.

## I. Defendants' Motion to Dismiss Fourth Amended Complaint

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A court should dismiss a claim only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998) (citations omitted). The court must accept all well-pleaded factual allegations in the light most favorable to the plaintiff. *Colfax Corp. v. Illinois State Toll Highway Auth.*, 79 F.3d 631, 632 (7th Cir. 1996).

The defendants make several distinct arguments in favor of dismissing the fourth amended complaint, some of which are repetitive of arguments made in briefing on the summary judgment and class certification motions. Those repetitive arguments will not be mentioned under this heading, but will be discussed below, in connection with the motions to which they are most applicable.

### Individual Defendants - All Claims

Defendants' first argument is that the plaintiffs fail to state a claim as to either of the individual defendants, Cheslock and Schulman. As to Count I, the defendants argue that the FDCPA regulations do not apply to the individual defendants because employees of a creditor are not "debt collectors," as defined by the statute, merely because of their employment with a creditor. This is certainly true. *See* 15 U.S.C. § 1692a(6)(A) (expressly excluding "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor"); *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000).

However, the plaintiffs are not alleging that Schulman is a "debt collector" simply by his status as an employee of Short Term Loans.  Defendants overlook the important statutory language including as a "debt collector" a "creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. 1692a(6).  In *Laws v. Cheslock,* involving one of the individual defendants here and considering a similar collection letter (but with Cheslock's name in the letterhead), the court held that this language made Cheslock a debt collector under the FDCPA, since the letter would deceive the unsophisticated consumer. No. 98 C 6403, 1999 U.S. Dist. LEXIS 3416, at *4-10 (N.D. Ill. Mar. 8, 1999); *see also Britton v. Weiss,* No. 89 CV 143, 1989 U.S. Dist. LEXIS 14610, at *5 (N.D. N.Y. Dec. 8, 1989) ("the employee becomes a 'debt collector' when he does not act 'in the name of the creditor'").  The Seventh Circuit cases cited by defendant consider only other facets of the "debt collector" definition; they do not overrule the *Laws* reasoning respecting the specific inclusionary provision of § 1692a(6), applicable here.  *See Pettit,* 211 F.3d at 1059 (shareholder and president not liable merely because of his status as such); *White v. Goodman,* 200 F.3d 1016, 1019 (7th Cir. 2000) (same); *Aubert v. American Gen'l Finance, Inc.,* 137 F.3d 976, 978-79 (7th Cir. 1998) (considering a specific exception to the definition for corporate affiliates).  Nor do the defendants' cases undermine the reasoning of *Britton;* an employee is not exempted from liability by § 1692(6)(A)'s exclusion if he does not act in the name of the creditor.  Because the complaint here alleges that Schulman's letter would mislead unsophisticated consumers into thinking it originated from a third party, the complaint sufficiently states an FDCPA claim against Schulman.  The complaint, however, does not make any specific allegation of wrongdoing against defendant Cheslock, other than that he is a

9

"managing agent" of Short Term Loans. As established by *Pettit*, that allegation is insufficient to state a claim against Cheslock under the FDCPA. *See Pettit*, 211 F.3d at 1059.

As to Count II, the TILA claim, the defendants argue that the statute only regulates "creditors" as defined by the statute. *See* 15 U.S.C. §§ 1602(f), 1609(a)(9). TILA defines a creditor as one who both regularly extends consumer credit and is the person to whom the debt is initially payable. 15 U.S.C. §§ 1602(f). Thus, defendants argue, the individual defendants cannot be liable under TILA because they did not actually lend any money. The plaintiffs do not dispute this. Because the individual defendants are not "creditors" under the statute, the plaintiffs fail to state a claim as to the individual defendants in Count II.

As to Count III, the unconscionability claim, the defendants argue that Schulman and Cheslock cannot be liable because they did not personally make any loans with exorbitant interest rates. The plaintiffs do not respond to this argument. A common law claim of unconscionability is focused on the formation and terms of a one-sided contract. *See generally Mitchem v. American Loan Co.*, No. 99 C 1868, 2000 WL 290276, at *4 (N.D. Ill. Mar. 17, 2000) (discussing claim of unconscionability in payday loans case). The complaint contains no allegations that Schulman or Cheslock personally entered into a loan agreement with plaintiffs. Nor does it contain any allegation that either Schulman or Cheslock even participated in the formation of any one of the contracts between Short Term Loans and the plaintiffs. Thus, the unconscionability claim is dismissed as to the individual defendants.

Finally, with respect to Count IV, the ICFA claim, the defendants argue that the statutory regulations apply only to lenders. The plaintiffs respond by arguing that ICFA also applies to employees if they either direct or permit violations of ICFA regulations. *See Garcia v. Overland*

10

*Bond & Investment Co.*, 668 N.E.2d 199, 207 (Ill. App. Ct. 1996).  The statute itself regulates any "person," defined by the statute to include any "agent, employee, salesman . . . [etc.]" of a corporation.  815 ILCS 505/1(c).  Thus, if the complaint alleges that either Schulman or Cheslock participated in a violation of the ICFA regulations, it states a valid claim against that individual.  Count IV alleges ICFA violations based on 1) the charging of exorbitant interest rates, 2) the failure to make proper disclosures with the loans, and 3) sending collection letters suggesting that an independent law firm was collecting the debts.  Reading the complaint in the light most favorable to plaintiffs, and making a reasonable inference, it alleges that Schulman personally participated in the third category of activities by sending letters under his name. However, the complaint fails to make any allegations against Cheslock respecting any of these activities.  Nowhere does the complaint allege, for instance, that Cheslock made a given loan without making the proper disclosures.  Thus, Count IV states a claim against Schulman, but not against Cheslock.[3]

### *Specificity in Pleadings - ICFA*

Defendants next argue that the plaintiffs fail to meet the specific pleading requirements for pleading a violation of ICFA.  Under Federal Rule 9(b), a plaintiff alleging fraud or mistake

---

[3] The defendants suggest that because the individual defendants cannot be liable under TILA, they are therefore immune from liability under ICFA.  (*See* Reply at 6 (citing *Taylor v. Quality Hyundai*, 932 F. Supp. 218 (N.D. Ill. 1996) *aff'd in part, rev'd in part*, 150 F.3d 689 (7th Cir. 1998)).  Although the fact that certain *conduct* was in compliance with TILA may be a defense to liability under ICFA, there is no reason to believe that ICFA cannot expand liability to reach *persons* whose conduct would be in violation of TILA, but who are otherwise immune from suit under TILA.  *See Taylor*, 932 F. Supp. at 220 ("The Illinois Supreme Court determined that *conduct* authorized by TILA cannot constitute a violation of the ICFA.") (emphasis added).  Thus, an employee of a lender may be immune from TILA liability but still subject to ICFA liability.

must state with particularity "the circumstances constituting fraud or mistake." Fed. R. Civ. P.

9(b). The court will assume, for present purposes, that this standard applies to claims involving

fraud under ICFA. The defendants argue that the plaintiffs have not adequately alleged

proximate cause or damages with particularity. However, even under the heightened pleading

standards of 9(b), the plaintiff need not plead cause or damages with the degree of particularity

that defendants would require. Even though 9(b) requires particularity, the federal pleading

system is still a notice pleading system. *See Christakos v. Intercounty Title Co.*, 196 F.R.D. 496,

504 (N.D. Ill. 2000). Thus, more particularity is not required as to damages (and similarly

causation) where the facts alleged are sufficient to put the defendant on notice of the who, what,

where, when, and how of the misleading practice. *See id.; Cobb v. Monarch Finance Corp.*, 913

F. Supp. 1164, 1180, n.4 (N.D. Ill. 1995). The fact that plaintiffs did not use the words

"proximate cause" or itemize damages is irrelevant. The plaintiffs alleged: "Plaintiff and the

class members were damaged by defendants' unfair and deceptive acts and practices." (4th Am.

Compl. at 13). At other places in the complaint, the plaintiffs adequately set forth the who, what,

where, and when of the deceptive practices with particularity. Thus, the defendants are on notice

of the nature of the ICFA claim against them.

   Further, although the defendants have support for their contention that an ICFA plaintiff

must allege actual damages to maintain a private action, *see Duran v. Leslie Oldsmobile, Inc.*,

594 N.E.2d 1355, 1361-62 (Ill. App. Ct. 1992), the court reads the allegation on page 13 of the

fourth amended complaint as alleging actual, rather than statutory, damages. The plaintiffs,

including also the purported class members, may be able to prove facts consistent with the

complaint establishing actual damages proximately caused by the defendants' conduct. *See*

*Taylor v. Bob O'Connor Ford, Inc.*, No. 97 C 0720, 1998 WL 177689, at *9 (N.D. Ill. Apr. 13,

1998); *cf. Dwyer v. American Express Co.*, 652 N.E.2d 1351, 1357 (Ill. App. Ct. 1995) (even

taking all alleged facts as true, the only damage plaintiff could have possibly suffered was receipt

of unwanted mail).  Although plaintiffs may eventually fail to show any such actual damages, a

motion to dismiss evaluates only the sufficiency of the pleadings themselves.  Thus, the plaintiffs

have adequately alleged a claim under ICFA.

### *Supplemental Jurisdiction - ICFA and Unconscionability*

Defendants next contend that the court should decline to exercise supplemental

jurisdiction over the ICFA and unconscionability state law claims.  This argument is based on

*Gutierrez v. Devon Financial Services, Inc.*, No. 99 C 2647, 1999 U.S. Dist. LEXIS 19738, at

*2-*5 (N.D. Ill. 1999).  In *Gutierrez*, the plaintiffs alleged, *inter alia*, a violation of ICFA and an

unconscionability claim against a payday lender based on exorbitant interest rates.  The court

declined to exercise subject matter jurisdiction over these state law claims because the Illinois

Interest Act and the Consumer Installment Loan Act, when read together, allow a payday lender

to charge any rate of interest it chooses to charge.  The court reasoned that these statutes made it

unlikely that exorbitant interest rates could nevertheless serve as the basis for a claim of

unconscionability or for an ICFA claim.  The question of whether either of these claims were

viable, in light of the Illinois Interest Act and the Consumer Installment Loan Act, was a novel

one under Illinois law and should be left for Illinois courts to decide. *See id.* at *3-*4.

The court recognizes that *Gutierrez* is squarely on point with the present case, to the

extent that plaintiffs' claims are based on exorbitant interest rates.  The unconscionability and

ICFA claims, however, are not based solely on high interest rates, but also include allegations of

other conduct.  (4th Am. Compl. at ¶¶ 56(b)-(c), 66(b)-(c)).  In any event, the *Gutierrez* case has

not been consistently followed in this district.  Judges in this district, when faced with one of the

multitude of payday loan cases like this one, and when considering precisely this issue, have

more often than not opted to exercise supplemental jurisdiction over ICFA and unconscionability

claims.  *See Donnelly v. Illini Cash Advance, Inc.*, No. 00 C 094, 2000 WL 1161076, at *5 (N.D.

Ill. Aug. 16, 2000); *Davis v. Cash For Payday, Inc.*, No. 00 C 34, 2000 WL 639734, at *7 (N.D.

Ill. Apr. 26, 2000) (listing several other cases); *Pinkett v. Moolah Loan Co.*, No. 99 C 2700, 1999

WL 1080596, at *8 (N.D. Ill. Nov. 2, 1999).  In light of these cases, the court is inclined to

exercise supplemental jurisdiction over the ICFA and unconscionability claims so long as one of

the federal question claims survive.

### *Relation Back - TILA*

Finally, the defendants argue that plaintiffs' new TILA claim, added by the fourth

amended complaint, is either time-barred or waived.  The order entered by this court on

September 18, 2000 indicated that the new TILA claim related back to the initial complaint, filed

on February 26, 1999, under Federal Rule 15(c).  (Order 9/18/00 at 2).  Defendants suggest,

however, that under Rule 15(c), a complaint can relate back only to the immediately prior

complaint, because an amended complaint completely supplants the preceding complaint.  (Mtn.

to Dismiss at 12).  Defendants maintain that once a claim from an earlier pleading is dropped in

an amended pleading, that claim may not be "revived" by a later amendment to the amended

pleading.  In support of their arguments, defendants cite the following cases: *Ericson v. Slomer*,

94 F.2d 437 (7th Cir. 1938); *Siakpere v. Boucher*, No. 84 C 6768, 1986 WL 5657 (N.D. Ill. May

7, 1986); *Lubin v. Chicago Title and Trust, Co.*, 260 F.2d 411 (7th Cir. 1958); *Marx v. Loral*

14

*Corp.*, 87 F.3d 1049 (9th Cir. 1996); *King v. Atiyeh*, 814 F.2d 565 (9th Cir. 1987); *London v.*

*Coopers & Lybrand*, 644 F.2d 811 (9th Cir. 1981).  The first three of these cases do state a

general rule that the filing of an amended complaint supplants the earlier complaint, leaving no

function for the original complaint to perform.  However, none of these cases dealt with the Rule

15(c) relation back question currently before the court.  The other three cases come from the

Ninth Circuit and set out that circuit's rule that a plaintiff who files an amended complaint

omitting a claim that was earlier dismissed by the court waives that claim, even on appeal.  This

minority rule has been criticized by other courts, including the Second, Tenth, and Eleventh

Circuits, as overly formalistic.  *See Crysen/Montenay Energy Co. v. Shell Oil Co.*, 226 F.3d 160,

162 (2d Cir. 2000) (noting cases in the Tenth and Eleventh Circuits that are also critical of the

Ninth Circuit's position).

   The court is not persuaded by the defendants' authorities.  The plain language of Rule

15(c) states that an amendment "relates back to the date of the *original* pleading when . . . the

claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence

set forth . . . in the *original* pleading."  Fed. R. Civ. P. 15(c) (emphasis added).  Although the

Rule does not define "original," the court finds that the plain meaning of that term refers to the

very first such pleading.  Moreover, the purpose of the Rule supports this conclusion.  The

rationale for permitting relation back under Federal Rule 15(c) is that the defendants, because of

the original complaint, are on notice of the subject matter of the dispute and will not be unduly

surprised or prejudiced by the later complaint.  *See Hill v. Shelander*, 924 F.2d 1370, 1377 (7th

Cir. 1991).  Surely the plaintiffs' original complaint, not to mention their first and second

amended complaints, were sufficient to put the defendants on notice of the subject matter of this

complaint – that is, the transactions that the plaintiffs were complaining of.  To the extent that the

waiver rule propounded in the Ninth Circuit cases applies to relation back under Rule 15(c), this

court declines to follow it as overly formalistic and contrary to the liberal pleading policies of the

Federal Rules.  Although the TILA claim is based on different alleged statutory violations, it

centers on the same loans and the same disclosure forms that have been the subject of each and

every pleading filed by the plaintiffs.  Thus, the court concludes that the new TILA claims are

neither time-barred nor waived.

### Conclusion

For the foregoing reasons, the defendants' motion to dismiss is granted only in the

following respects:  1) all claims against defendant Cheslock are dismissed, 2) Counts II and III

are dismissed as to defendant Schulman.  Defendants' motion to dismiss is denied in all other

respects.

## II.  Cross-Motions for Summary Judgment and Defendants' Motion to Strike

Defendants' motion for summary judgment was directed at the single FDCPA claim

alleged in the third amended complaint.  The fourth amended complaint kept that claim intact as

Count I.  Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed.R.Civ.P. 56(c).  When considering a motion for summary judgment, the

court must view the record and any inferences to be drawn from it in the light most favorable to

the party opposing summary judgment.  *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.

1991).  The party opposing summary judgment may not rest upon the pleadings, but "must set

16

forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.*  The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The defendants make three distinct arguments in favor of summary judgment as to that claim:  1) the defendants are not "debt collectors," as defined by the FDCPA, thus rendering the FDCPA's regulations inapplicable, 2) the collection letter (set out above) was not the "initial written communication" to the plaintiffs regarding the delinquent debt, thus precluding a claim under §1692(e)(11) of the FDCPA, and 3) the plaintiffs' borrowings were not for consumer purposes, as required for recovery under the statute.  The plaintiffs filed a cross motion for summary judgment as to liability on the FDCPA claim.

### *"Debt Collector"*

The court first addresses whether the defendants are "debt collectors," because if they are not, then the FDCPA is inapplicable.  *See* 15 U.S.C. § 1692e.  As discussed above, the term "debt collectors" includes any "creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. 1692a(6).   After reviewing the record, the court finds that neither party is entitled to summary judgment on this issue because there is a genuine issue of material fact with respect to whether or not the defendants are "debt collectors" under the FDCPA.

Courts have used an "unsophisticated consumer" standard when evaluating whether a letter appears to be from a third party in violation of the FDCPA. *See, e.g., Avila v. Rubin*, 84

17

F.3d 222, 227-29 (7th Cir. 1996). The question of whether or not an unsophisticated consumer would be misled by the letter is a question of fact. *Walker v. National Recovery*, 200 F.3d 500, 502 (7th Cir. 1999). In *Laws v. Cheslock*, the court granted summary judgment as to liability for the plaintiff in a case involving a dunning letter with very similar characteristics. *See Laws*, 1999 U.S. Dist. LEXIS 3416, at *12. The court based its decision on its own evaluation of the letter, including the potentially misleading letterhead and language.[4]  The defendants argue that several Seventh Circuit cases decided after *Laws* implicitly overruled *Laws* by holding that a plaintiff must present a survey or other extrinsic evidence showing confusion in order to overcome summary judgment. (Reply in Supp. Summ. J. at 3) (citing *Pettit*, 211 F.3d 1057; *Aubert*, 137 F.3d 976; *White*, 200 F.3d 1016; *Walker*, 200 F.2d 500). The court, however, believes that defendants are reading too much into the *Pettit*, *Aubert*, *White*, and *Walker* decisions. To be sure, these cases have expressed a preference for survey evidence to show confusion, and even required it in some cases. Here, however, the court, like the *Laws* court, finds that the letter itself presents enough ambiguity that an unsophisticated consumer might be misled by it. Unlike the cases cited by defendants, where the plaintiffs' interpretations were "fantastic conjecture" or "ingenious misreadings," here there is an ambiguity created by the letter itself, not an irrational misreading of it. *Cf. White*, 200 F.3d at 1020; *Pettit*, 211 F.3d at 1062. The potential for confusion here is obvious even to the court, such that plaintiff is not "merely speculat[ing] about

---

[4] The court itself informally compared the letterhead of the letter in question to the letterhead of all the letters found in chambers, noting that the letters in chambers always listed an attorney's name *under* the name of his or her firm or company, not vice-versa. *See Laws*, 1999 U.S. Dist. LEXIS 3416, at *8 n.1. The court concluded that a reasonable, unsophisticated consumer "certainly could be expected to rely on this basic tenet of company letterhead in determining the letter's origin." *Id.*

how a naive debtor would interpret the letter." *Pettit*, 211 F.3d at 1061. Where the court, whose

comprehension exceeds that of an unsophisticated consumer, believes that the letter has the

potential to confuse, summary judgment may be inappropriate. *Rosenburg v. Transworld*

*Systems, Inc.*, No. 98 C 5983, 2000 WL 420865, at *2 (N.D. Ill. Apr. 17, 2000); *see also Avila*,

84 F.3d at 226-27. This court, like the court in *Rosenburg*, can easily understand how a jury

might find the letter so misleading as to violate the FDCPA.

Despite the court's recognition of the letter's potential to mislead consumers, the court

declines to find as a matter of law that the letter would mislead a consumer into believing it

originated from an independent attorney. *Cf. Laws*, 1999 U.S. Dist. LEXIS 3416, at *10. A

reasonable jury might find that the letter is not misleading. At this point, it becomes clear that

plaintiff's cross-motion for summary judgment as to liability on FDCPA must be denied, for

there remains at least one material factual question left to be resolved before the plaintiff could

be entitled to judgment as a matter of law on Count I.

*"Initial Communication"*

Section 1692e of the FDCPA provides: "[T]he following conduct is a violation of this

section: . . . (11) The failure to disclose in the initial written communication with the consumer

. . . that the debt collector is attempting to collect a debt and that any information obtained will be

used for that purpose, and the failure to disclose in subsequent communications that the

communication is from a debt collector." 15 U.S.C. §1692e. The letters complained of are dated

February 18, 1999. Defendants argue that these were not the "initial communication[s]" because

a letter informing Derrick Smith that Short Term Loans intended to have his wages assigned was

sent in November 1998. That letter, dated November 11, 1998 was attached to the Third

19

Amended Complaint as Exhibit 27. The defendants do not point to any letter addressed to Valerie Smith that was dated prior to February 18, 1999. Plaintiffs maintain that the February letters violate § 1692e(11), but they do not respond to defendants' argument. Because the February letter to Derrick Smith was not the initial written communication by Short Term Loans, his FDCPA claim fails, but only to the extent that it is based on a violation of § 1692e(11).[5] Valerie Smith's claim under section 1692e(11), however, is not affected by defendants' argument on this point, since there is no evidence that the February 1999 letter was not the first communication regarding her outstanding debt.

*Consumer Purposes*

Finally, defendants repeatedly argue that plaintiffs' loans were not "primarily for personal, family, or household purposes," making the FDCPA inapplicable. 15 U.S.C. §1692a(5). Defendants maintain that the plaintiffs were engaged in a check-kiting scheme in order to defraud their creditors. The defendants note that there is scant evidence about the purpose of the loans, and that on some occasions during depositions, the plaintiffs could not identify what the money was used for. To overcome this motion for summary judgment, however, the plaintiff need only produce evidence from which a reasonable jury could find that the loans were used for consumer purposes. *See generally Anderson*, 477 U.S. 242. This the

---

[5] It is arguable that the letter violates the lesser regulations placed on a "subsequent communication" by the statute. As a "subsequent communication," though, the letter need only indicate that it is "from a debt collector." 15 U.S.C. §1692e(11). Although the letter does not use the exact term "debt collector," it need not do so to comply with the statute. *Ross v. Commercial Fin. Servs., Inc.*, 31 F. Supp. 2d 1077, 1079-80 (N.D. Ill. 1990). The February letter, read in context, could be interpreted only as originating from the creditor, Short Term Loans, or from an agent trying to collect on a debt for the creditor, attorney Brian Schulman. Thus, the letter clearly conveys that it is from a debt collector, although it does not explicitly use the statutory term. *See id.*

plaintiffs have done.  Derrick Smith testified that funds from the loans were used for school

clothes and household bills.  (D. Smith Dep. at 21, 46).  Whether or not to believe this testimony,

in light of other countervailing evidence or gaps in evidence, is a question of credibility for the

jury to decide.  Although the Smiths could not identify which loans were used for what, there is

sufficient evidence for a jury to find that the loans were used for household purposes.  The

statute's requirement that the loans be used primarily for personal, family, or household purposes

cannot be so strict as to require a plaintiff to trace each dollar borrowed to a consumer purchase

in order to overcome summary judgment.  This is especially true in the context of payday loans,

where the amounts are generally small and the "rollovers" can be frequent.

### *Defendants' Motion to Strike*

Defendants moved to strike certain exhibits and statements of fact attached to the

plaintiffs' response and cross-motion brief.  These exhibits consisted of studies that tend to show

patterns of borrowing behavior exhibited by short-term, payday borrowers.  The court need not

resolve this motion in order to dispose of the cross-motions for summary judgment.  Even

considering the additional evidence, plaintiff is not entitled to summary judgment because a

question of fact remains:  whether the letters would mislead an unsophisticated consumer into

believing that they originated from a third party.  And even without considering the studies,

defendant is not entitled to summary judgment because the depositions alone create an issue of

material fact as to whether the loans were for consumer purposes.  Thus, defendants' motion to

strike is denied as moot.

### *Conclusion*

Defendants' motion for summary judgment is granted as to Derrick Smith's claim under

Section 1962e(11), and denied in all other respects. Plaintiff's cross-motion for summary judgment is denied.

## III. Class Certification

After considering the defendants' dispositive motions, the court proceeds to address the pending motion for class certification. The plaintiffs technically have two outstanding motions for class certification. The first of the two was filed on June 28, 2000, and corresponded to the third amended complaint, containing only the FDCPA claim. The second was filed on October 2, 2000, in connection with the fourth amended complaint, and was captioned "Amended Motion for Class Certification." This motion sought certification as to all four claims contained in the fourth amended complaint. In briefing for the latter motion, the parties incorporated their arguments from the earlier motion for certification. Thus, the October motion for class certification essentially supercedes the June motion. The motion for class certification filed on June 28, 2000, is therefore denied as moot. In the remaining motion, the issues surrounding certification vary with respect to each of the four current claims; thus, each claim will receive individual consideration under Federal Rule 23.

The prerequisites for certification of a class action are set forth in Federal Rule 23. A class may be certified only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In order to maintain a class action for damages, the court must also find that "questions of law or fact common to the members of the class predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). With these requirements in mind, the court now turns to the purported classes under each individual claim.

### Count I: FDCPA

For the FDCPA claim, the plaintiffs propose a class consisting of all natural persons who were the subject of collection demands in the forms represented by Exhibit 27 to the motion for class certification (the Feb. 18, 1999 letter set forth above), sent on or after February 26, 1998 and not returned by the Postal Service.

A. Numerosity

Where the precise size of the class cannot be known until after complete discovery the court, in some situations, may still find that the numerosity requirement is met. Where it is general knowledge or common sense that the proposed class would be large, the court may assume that joinder would be impracticable. *See Rivera v. Grossinger Autoplex, Inc.*, No. 00 C 442, 2000 WL 1280904, at *3 (N.D. Ill. Sep. 1, 2000). Here, the dunning letter sent by Short Term Loans was a form letter used to communicate with delinquent debtors. Thus, the court will take judicial notice of the fact that the number of persons receiving letters represented by the February 18, 1999 letters to the Smiths is so large that joinder would be impracticable.

B. Common Questions of Law or Fact

In order to meet the second requirement, a purported class representative need only show that there is one question of law or fact common to the resolution of the class members' claims. *See Rivera*, 2000 WL 1280904, at *3. This requirement is usually met where the defendant has engaged in some standardized conduct, such as sending out form letters that are allegedly illegal.

23

*See Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).  Here, there is at least one question common to the claims of all purported class members – namely, whether or not the letterhead on the dunning letter would mislead the reasonably unsophisticated consumer into believing that the letter originated from an independent attorney.

### C.  Typicality

The typicality requirement is met if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory."  *Keele*, 149 F.3d at 595 (internal quotation marks and citation omitted). The Smiths assert that "typicality is inherent in the class definition."  (Memo. Supp. of Am. Mtn. at 11).  Defendants take issue with this characterization, pointing to several potential distinctions between the Smiths' claims and the claims of other purported class members.  Only one of these distinctions is relevant to the FDCPA claim.  The defendants argue that the Smiths' claims are not typical because they are subject to the unique defense that the loans were not for consumer purposes.  As discussed above, the court finds that a question of fact remains as to whether the Smiths' loans were for consumer purposes.  Nonetheless, the court concludes that the typicality requirement is met.  Although a defense unique to the representative plaintiffs' claims is a factor for the court to consider, it need not destroy typicality in every case.  *See* In Re: *Systems Software Assoc. Inc. Securities Litig.*, 97 C 177, 2000 WL 1810085, at *2 (N.D. Ill. Dec. 8, 2000).  Only where litigation about the unique defense would consume the merits of the case will the existence of a defense necessarily defeat class certification.  *See id.*  Here, the question of whether or not the loans were for consumer purposes will be a minor issue at trial, when compared to the issues common to all of the class members.  Most of the litigation will

presumably focus on the legality of the dunning letters, and whether or not the defendants are

"debt collectors" under the FDCPA, which are questions common to all of the purported class

members' claims.[6]  Thus, the typicality requirement is met.[7]

D.  Adequate Representation

The fourth requirement of Rule 23 is that the named plaintiff provide adequate

representation for the interests of the class.  This requirement is comprised of two separate

inquiries:  1)  Is the plaintiff's attorney qualified, experienced, and able to conduct the proposed

litigation? 2)  Does the plaintiff have interests antagonistic to those of the purported class

members?  *See generally Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997).

Defendants only challenge the named plaintiffs' adequacy under the second inquiry.  Defendants

argue that the Smiths cannot fairly represent the class because they did not use the loans for

---

[6] The defendants apparently contend that the question of whether or not they are "debt collectors" under the statute precludes a class action because the Smiths' claims are not typical of those of the purported class.  By definition, however, the class includes only those who received a letter in the form of the dunning letters the Smiths received.  Whether or not the defendants are "debt collectors" turns on the misleading nature of those letters.  Thus, plaintiffs' claims are typical.  A finding that the Smiths themselves were not, in fact, misled by the letter would not destroy this typicality.  Cases have analyzed this particular question by examining whether the letter would mislead a hypothetical, reasonable but unsophisticated debtor.  *See Laws*, 1999 U.S. Dist. LEXIS 3416, at *10.  Whether or not the Smiths were actually misled is irrelevant to this question.

[7] Although the court finds the Smiths' FDCPA claims, as a whole, typical of the claims of purported class members, there are individual differences with respect to the § 1692e(11) claim which make it more difficult to proceed as a class action.  Specifically, the question of whether the dunning letter was the "initial communication" would need to be determined with respect to each individual class member.  Indeed, the named plaintiffs' claims themselves seem to differ in this respect, making it questionable whether they are adequate representatives of the class as to this specific violation.  As a result, the class certified as to the FDCPA claim will not be allowed to assert violations of § 1692e(11) as the basis for a class claim, but rather are limited to individual claims for any such violations.

consumer purposes, but rather were "Ponzi schemers." (Opp. to Am. Mtn. at 12). As discussed above, this is an unresolved factual question. Moreover, it is a factual question that will not dominate the litigation. Finally, it is not at all clear that this unique defense necessarily creates a conflict of interest between the Smiths and the other purported class members. In short, the court will not deny certification of an otherwise valid FDCPA class simply because the defendants have made allegations that the named plaintiffs were not consumers.

E. Predominance and Superiority

In addition to the four requirements of Rule 23(a), a plaintiff seeking to certify a class action for damages under Rule 23(b)(3) must also show that common questions predominate and that a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). As intimated above, common questions will predominate. The only individual question arguably left for resolution would be whether or not the loans were used for consumer purposes. Questions about the legality of the dunning letter under the FDCPA will be common to the entire class. Finally, a class action is the best way to resolve the claims of the purported class. Where, as here, the defendant engaged in standardized conduct (sending form dunning letters) that affected many consumers, but where an individual consumer's claim would be too small to justify bringing an individual suit, a class action is particularly suited to the resolution of the consumers' claims. *See Rivera*, 2000 WL 1280904, at *5.

Much of the analysis concerning certification of the FDCPA class applies by analogy to the remaining class claims, including the TILA claim.[8] As a result, the discussion of the

---

[8] For instance, although the TILA claim is defined by reference to disclosure forms rather than the dunning letters, common sense still indicates that the number of persons obtaining loans pursuant to the standardized disclosure forms is also large enough to make joinder of all the

remaining claims will focus only on the defendants' specific arguments against certification that are addressed to each particular claim.

### Count II: TILA

With respect to the TILA claim, plaintiffs seek to certify a class of all persons with Illinois addresses who signed a document "in the form of the loan agreements attached to the complaint." (Am. Mtn. for Class Cert. at 2). There were several slightly different loan agreement/disclosure forms attached to the complaint.

The defendants argue that certification of the TILA class would be inappropriate for three reasons. First, the defendants argue that the settlement of a prior class action suit against Short Term Loans bars recovery under TILA for all class members except those who, like the Smiths, opted out of that class. Second, the defendants argue that the TILA claims cannot proceed as a class action because the disclosure forms used by Short Term Loans varied. Third, the defendants argue that there is no way to tell whether or not a security interest was given in any particular case, forcing the court to make individual determinations as to each purported class member. The court finds each of these reasons unpersuasive.

In *Anderson v. Short Term Loans*, 98 C 4949, the plaintiffs alleged class claims against Short Term Loans under TILA and common law unconscionability. (Opp. to Am. Mtn., Exh. C). A settlement class was certified, consisting of all natural persons who "received disclosure statements prepared suing the same form represented by Exhibit A to the settlement agreement" on or after August 11, 1997 and "were listed by Defendants as identified class members pursuant to the Settlement Agreement." (Order 4/22/99, Opp. to Am. Mtn., Exh. C). In exchange for

---

parties impracticable.

certain payments, the plaintiffs released Short Term Loans, its officers, directors, and employees "of and from all causes of action, suits, claims and demands [etc.] arising out of the claims made on behalf of the class members" in the *Anderson* case and a related case.  Thus, as the defendants here maintain, the released claims were defined by the complaint in *Anderson*.  But the class granting the release was limited to those Short Term Loans customers who received disclosure statements in the form at issue in the *Anderson* case (referred to by the parties as the 1/21/98 form, the date it was apparently created).  Here, plaintiffs are alleging claims based on different disclosure forms.  Thus, the defendants are mistaken to conclude that the Smiths can represent only those who opted-out of *Anderson*.  Plaintiffs may proceed to represent any purported class members who received a disclosure agreement different in form than the one represented by Exhibit A attached to the *Anderson* complaint.  (Opp. to Am. Mtn., Exh. C).  The parties have made it clear that several different forms were used, and there is reason to believe that several potential plaintiffs, like the Smiths, received forms different from the 1/21/98 form at issue in the *Anderson* complaint.[9]  As this court earlier stated:  "Given the 'hypertechnical' nature of TILA actions . . . loans involving these different disclosure statements could give rise to different causes of action, and as a result they do not fall within the scope of the settlement agreement." (Order 9/18/00 at 2) (citation omitted).[10]

---

[9] The court is aware that some borrowers may have, on separate occasions, received both a disclosure form like the one in *Anderson*, and a form like one of those at issue in this case. This fact is not sufficient to preclude such borrowers from participating in the present purported class action.  Their claims based on non-*Anderson* forms do not arise out of the claims asserted in the *Anderson* complaint, and therefore are not barred by the settlement agreement.

[10] In addition, it should be noted that the violations alleged in the *Anderson* complaint differ from the violations alleged in this case.  In *Anderson*, the TILA claim was based on the inconspicuous nature of the finance charges and APR's on the disclosure form, not the

28

Next, defendant maintains that the TILA claim may not proceed as a class action because the disclosure forms used by Short Term Loans varied among the class members. Defendants point out that the purported class will include claims under five different disclosure statements. The problem, defendants argue, is that the court "will have to make an individual determination with regard to whether each particular form violates TILA." (Opp. to Am. Mtn. at 8). As mentioned above, the hypertechnical nature of TILA will indeed give rise to the possibility that some forms adequately disclose the security interests while others do not. Nevertheless, the court finds that each of the forms will still raise common questions of law and fact. The most efficient resolution of all of the potential plaintiffs' claims is not to force a named plaintiff to bring a separate action based on each and every different form used. Although the *Anderson* settlement limited the class to those who received one particular form, there is no reason that the class in this case should be similarly limited. The forms at issue are similar and one court can resolve common questions concerning all of the forms in one action. Thus, the court declines to narrowly limit the class to persons receiving only one particular form.

Finally, the defendants argue that the class claims are not common and that the members of the class will be impossible to identify because not every loan involved a security interest in wages or a post-dated check. This is the most difficult obstacle to class resolution of the claims involved in this case. It is undisputed that Short Term Loans often took security interests in wage assignments or post-dated checks, but *sometimes did not*. Thus, not every single customer who received an inadequate disclosure statement will have a valid claim under TILA for failure to disclose a security interest. The defendant, however, is at least partially to blame for this

---

sufficiency of security interest disclosures.

difficulty.  Although arguably required to keep copies of all documents pertaining to security interests taken, *see* 38 Ill. Adm. Code § 110.30, the defendants relied solely on the disclosure statements for record-keeping purposes and gave the wage assignment forms or post-dated checks back to debtors after loans were repaid.  Where, as here, the disclosures on the disclosure statements are themselves at issue, that record-keeping system is insufficient to identify whether or not a security interest was actually taken.  Whether or not giving back the security documents without keeping copies is a violation of Illinois law, it is certainly a less-than-ideal record-keeping system for purposes of determining compliance with TILA's disclosure requirements. The court will not let the natural results of such record-keeping practices preclude a class action against the defendants.

### *Counts III-IV:  Unconscionability and ICFA*

As to unconscionability and ICFA, the plaintiffs seek to certify a class consisting of all persons with Illinois addresses who "obtained a loan from defendants at a rate exceeding 300% . . . [o]n or after a date 5 years (unconscionability) or 3 years (Consumer Fraud) prior to the filing of suit." (Am. Mtn. for Class Cert. at 2).  The defendants make only one argument peculiar to these two claims.  Defendants argue that the purported class will include persons whose claims for excessive interest rates were released under *Anderson*.  The court agrees with the defendants' concern on this point.  The class definition for the unconscionability and ICFA claims is not limited by reference to what disclosure forms were used.  Thus, the purported class will include some individuals who received an *Anderson* form, and whose interest rate claims are therefore barred by the settlement.  Rather than denying certification, however, the court will modify the class definition for these claims so that the class includes:

a. All persons with Illinois addresses (according to defendants' records);

b. Who obtained a loan from the defendants at a rate exceeding 300% and, in connection with that loan, signed a disclosure statement in a form other than the 1/21/98 form at issue in the *Anderson* case;

c. On or after a date 5 years (unconscionability) or 3 years (Consumer Fraud) prior to the filing of this suit.

### *Identification of Class Members*

The court is aware of the obvious difficulties that will arise in identifying the members of the certified classes who are ultimately entitled to recover, especially as to the TILA claims. But a class action serves not only to compensate plaintiffs, but also to deter defendants from engaging in "piecemeal highway robbery" by violating the law but causing only small damages to many plaintiffs. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, LLC*, No. 98 C 5563, 2001 WL 62697, at *3 (N.D. Ill. Jan. 25, 2001). Thus, the court finds that a class action is the superior method for resolving the claims of the potential plaintiffs. The administration of this class action and the potential recovery for the class members is discussed in more detail below.

### *Conclusion*

For the foregoing reasons, plaintiffs' amended motion for class certification is granted, as modified by this order.

### IV. Plaintiff's Motion for Summary Judgment

The named plaintiffs have moved for summary judgment as to liability on the TILA claim. Plaintiffs argue that there is no genuine issue of material fact as to whether Short Term Loans' disclosure statements violate TILA. The court, in the interests of judicial economy and

fairness to the class, declines to resolve the plaintiffs' motion on the merits of the TILA claim at this time. Unlike the defendants' motion to dismiss and motion for summary judgment, a resolution of this motion would significantly affect the interests of the absent class members. Those class members should be given the opportunity to opt-out or object to the adequacy of representation before a judgment is entered on the merits binding the parties. Moreover, the court believes that further briefing on this issue would be productive in light of this opinion.

## V. Plaintiffs' Motions for Default Judgment and to Compel

Plaintiffs have moved for entry of a default judgment and an order compelling defendants to turn over any and all documents relating to the claims of putative class members who have unpaid loans. At oral argument, plaintiffs essentially asked this court to 1) certify a class consisting of all customers having loan disclosure forms like those attached to the complaint, and 2) enter a default judgment on the TILA claims of that class because there is no way of finding out which borrowers executed a wage assignment or gave a post-dated check in connection with their loans. The problem of identifying class members entitled to recovery, as noted above, makes resolution of the TILA class claims difficult. Moreover, the defendants are at least partially at fault for inadequate (and perhaps illegal) record-keeping practices. However, the court is unwilling to grant plaintiffs the extreme remedy they seek.

Default judgment or dismissal is within the court's inherent powers to sanction for conduct which abuses the judicial process, but it is an extreme sanction. *See Cohn v. Taco Bell Corp.*, No. 92 C 5852, 1995 WL 519968, at *5 (N.D. Ill. Aug. 30, 1995). Where a party has an obligation to preserve documents, but fails to do so, sanctions may be warranted. *See id.* Here, whether the defendants had an obligation to preserve the loan documents is an arguable question

of Illinois law.  *See* 205 ILCS 670/11; 38 Ill. Adm. Code § 110.30.  The Illinois Consumer

Installment Loan Act requires that a lender retain "such records as are required by the Director to

enable the Director to determine whether the licensee is complying with the provisions of this

Act."  205 ILCS 670/11.  Included in the Act is a provision requiring lenders to disclose to the

borrower the type of security interest held.  *See* 205 ILCS 670/16(k).  Thus, it appears that

defendants were obligated to preserve a record of the type of security interest held for each loan

in order to determine compliance in a situation exactly like this one.  The defendants argue that

any such obligation to preserve documents lasted for only two years.  *See* 205 ILCS 670/11.

They point out that the documents were not requested by the plaintiffs until October 2000, and

argue that they therefore had no obligation to produce any documents for loans that were paid in

full before October 1998.  The defendants, however, were on notice of litigation concerning the

propriety of their loan disclosures well before that.  The original complaint, filed in February,

1999, contained general allegations of inadequate disclosures.  (Compl. ¶¶ 68, 71).  At the very

least, defendants were on notice of the specific security interest disclosure allegations in August,

2000, when the plaintiffs moved for leave to file the fourth amended complaint.  The TILA

claims, by definition, are limited to loans that originated on or after April 6, 1998 (the date that

the earliest non-*Anderson* form was created).  Documents concerning these loans should have

been preserved until at least April, 2000.[11]  As a result, most, if not all, of the loan documents

should have been in the possession of the defendants in August, 2000, the latest date on which

the defendants could possibly have received notice of the disclosure claims.  Thus, the court may

---

[11] And likely even later than that, since the statute requires preservation for two years
from the "final entry" for each loan, not from the origination date.  *See* 205 ILCS 670/11.

sanction the defendant, pursuant to its inherent powers, for failure to preserve those documents.[12]

The court, however, is hesitant to enter a default judgment against defendants in the absence of any evidence of bad faith. The plaintiffs produce no evidence suggesting that Short Term Loans' inadequate record-keeping system was used to avoid liability. The defendants' practice was to return original loan documents to borrowers after a loan was fully paid. Illinois law requires this of lenders. *See* 38 Ill. Adm. Code § 110.90. That defendants did not keep copies of the documents might have been sloppy, and perhaps in violation other provisions of Illinois law, but it does not establish bad faith. Although bad faith is not a strict prerequisite to entry of default judgment, the court should exercise restraint before imposing such a sanction, and should consider the nature of defendants' conduct as well as the prejudice to the plaintiffs. *See Cohn*, 1995 WL 519968, at *5. Because the court is able to craft an alternative solution that will reduce the prejudice to the plaintiff, and in light of the fact that defendants' conduct was merely negligent, the court declines to enter a default judgment in favor of the entire class.

Nonetheless, the court is also unwilling to permit the defendants to avoid liability under TILA simply because of their inadequate record-keeping system. Thus, the solution the court has reached respecting the TILA claims is somewhat of a compromise. The classes, as defined above, are certified pursuant to Federal Rule 23(b)(3). After notice has been given to the class

---

[12] Defendants also argue that only the Director may enforce the record-keeping provisions of the Illinois Consumer Installment Loan Act. This point is irrelevant. The statutes imposed an obligation on defendants to preserve records sufficient to determine compliance with a disclosure requirement. The nature of the obligation was such that the defendants were necessarily on notice of the need to keep disclosure-related documents, in case of a dispute such as this one. The court concludes that it is well within its inherent powers to craft an acceptable solution to the problem which includes the possibility of making adverse inferences against the defendant in the absence of direct proof.

members, the court will determine which, if any, of the disclosure forms would violate TILA if a security interest had been taken.  Any potential class member who can prove that he or she executed a wage assignment or gave a post-dated check in connection with a loan involving an inadequate disclosure form will be entitled to an individual recovery.  If the number of individual class members having such proof is insufficient to bring the total recovery up to the statutory cap of $500,000 or 1% of net worth, then the plaintiff may put forth evidence tending to show what percentage of loans executed by Short Term Loans are accompanied by a security interest in wages or post-dated checks.  In evaluating this evidence, the court will make reasonable inferences in favor of the plaintiff, in light of the fact that this problem was created, in part, by defendants' record-keeping practices.  The court will then determine the proper amount of damages based on the considerations for class action damages enumerated in 15 U.S.C. § 1640.

Finally, plaintiffs have moved to compel the defendants to produce loan documents pertaining to borrowers who have loans currently outstanding with Short Term Loans.  Given the resolution of the other pending motions in this case, the court finds that such information would be relevant.  If nothing else, these documents would be helpful in determining the approximate percentage of loans executed by Short Term Loans that are accompanied by security interests in wages or post-dated checks.  Regardless of any prior discovery agreements between the parties, this information should now be provided to the plaintiffs.  Thus, plaintiffs motion to compel is granted.

## Conclusion

For the foregoing reasons, the court hereby orders the following:

1) Defendants' motion to dismiss the Fourth Amended Complaint [70] is granted as to all claims

against defendant Cheslock and as to Counts II and III against defendant Schulman, and denied in all other respects.

2) Defendants' motion for summary judgment [55] is granted as to Derrick Smith's claim under Count I, only insofar as it is based on a violation of 15 U.S.C. § 1692(e)(11), and denied in all other respects.

3) Plaintiffs' cross-motion for partial summary judgment as to the FDCPA claim [64] is denied.

4) Defendants' motion to strike exhibits [71] is denied as moot.

5) Plaintiffs' motion for class certification as to the Third Amended Complaint [49] is denied as moot.

6) Plaintiff's "Amended Motion for Class Certification" as to the Fourth Amended Complaint [63] is granted as modified by this Order.

7) Plaintiffs' motion for entry of default judgment [81-1] is denied.

8) Plaintiffs' motion to compel [81-2] is granted.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED:   February 9, 2001